## MEEGAN BROTHERS v. SARAH A. McKAY.

### [*Opinion Filed Jan. 4, 1892.*]

1. NEBRASKA LAWS—*Damage by Animals.*—The laws of Nebraska, which were put in force in the Territory of Oklahoma by the Organic Act, and which provide for the recovery of damages for trespasses committed on cultivated lands by stock running at large, have no application to an injury done by a mule running at large to a young colt, by which the colt was killed.

2. VICIOUS ANIMALS—*Damage by*—The owner of a *vicious* animal, as a mule, who has notice of such *vicious* propensity, is liable at common law for an injury done by such animal to a young colt, by reason of such *vicious* propensity; but in such case it is necessary to aver and prove the *viciousness* of the animal, and the *scienter* of the owner.

*Appeal from Canadian County, Hon. A. J. Seay, Judge.*

*C. H. Carswell*, for Appellants.

*R. S. Smedly*, for Appellee.

The opinion of the court was delivered by

GREEN, C. J.: This was an action brought by appel-

lee against appellants, in the district court of Canadian county, to recover damages in the sum of $40 for the alleged killing of appellee's colt by appellants' mule. A trial was had, at the October term, 1890, which resulted in a verdict and judgment in favor of appellee and against appellants for the sum of $24.50 damages, and costs of suit; and appellants bring the record into this court by appeal.

This suit was brought and tried, while the laws of Nebraska, were in force in this Territory, and the facts as shown by petition, are as follows:

That plaintiff was the owner of a certain mare and colt, and that said mare and colt were, on, or about, the 1st day of May, 1890, at the farm of R. McKay, the husband of plaintiff, and in the enclosure of plaintiff, to-wit: the pasture of McKay, in Canadian county.

That defendants were, at that time, contractors, and doing work on the grade of the Rock Island railroad, running through R. McKay's farm, and were the owners of, and had control of a large number of mules, which were used on said grade.

That defendants did so carelessly, wrongfully and negligently let and permit their mules to run at large, and in the inclosed pasture of the said R. McKay, and knowing that the said mules were dangerous to the life of the said colt, and *well knowing* that the said mules would bite, strike and kick colts; and, after knowing all of said things, did permit said mules to run loose and in said inclosed pasture; and that said mule did bite, strike and kill said colt, the property of the plaintiff, to the damage of the plaintiff of $40.

The defendants below, the appellants here, answered, denying generally all of the allegations of the petition; and, on the trial, the court, among others, instructed the jury as follows:

"2. The jury are instructed that, if, at the time the plaintiff's colt was killed, it was on the premises leased by defendants south of wire fence and without author-ity from them, the defendants are not liable, unless it was killed by defendant's mule, and the mule had a vicious propensity to commit injury, and the defendants were aware of such propensity.

"3. The jury are instructed, that if they believe the defendants' mule killed plaintiff's colt, at any time from and after the 2d day of May, 1890, on the land claimed by McKay as a homestead, or that said colt was pur-sued from said homestead, and fled from the mule *on to* the Thomas homestead, and was there overtaken and killed by said mule, then you will find for the plaintiff the value of the colt, and it makes no difference in that case, whether the mule was vicious or not, or what its disposition was, it was the duty of the defendants to keep their mule away from the plaintiff's homestead.

"4. But if you believe the colt was killed by defend-ants' mule, before the 2d day of May, 1890, then you will apply the rule laid down in instruction numbered two."

To the giving of the instruction *numbered three* the defendants excepted, and asked the court to give the following instructions, which were refused; and to which refusal the defendants excepted:

"A. The jury are instructed, that the owners of do-mestic animals are not liable for damages done by them, which are not the result of general propensity, unless the owner was aware of such vicious propensity.

"B. I further instruct you, that if the plaintiff in the case could, by the exercise of ordinary, or common care and caution, have kept the colt on her own premises, and failed to do so, and the colt, by reason of such fail-ure, strayed upon defendants' premises and was there killed, then the plaintiff cannot revover, unless the defendants' mule was vicious, and the defendants had knowledge of such viciousness.

"C. The jury are instructed that there was no herd law in force in this Territory, at the time the colt was said to have been killed."

On the return of their verdict by the jury, the defendants filed in writing their motion for a new trial, which motion was overruled by the court, and the defendants excepted. The grounds of the motion for a new trial were:

" 1. The verdict is contrary to the law.

" 2. The verdict is contrary to the evidence.

" 3. Errors of law occurring at the trial, and duly excepted to, at the time, by said defendants.

" 4. The court erred in giving instructions numbered 3.

" 5. The court erred in refusing to give instructions asked for by the defendants, marked "A," "B," and "C"."

Numerous errors have been assigned by appellants, but it will only be necessary to consider the following:

1. The court erred in giving instruction numbered 3.

2. The court erred in overruling the motion for a new trial.

The facts of this case, as shown by the testimony of appellee herself, are, that she was the owner of a mare and colt which were running in a pasture on the south half of her husband's claim, and that the claim of Thomas adjoins her husband's on the south; that the south half of her husband's claim was used as a pasture and enclosed with a fence of one wire, strung on posts about four rods apart; that defendants' mule was in the pasture about sundown, and it was dark and raining; that the mule was chasing the colt and biting and kicking at it, and ran the colt south; that on the next morning the colt was found dead, from three to ten feet outside her husband's claim, and on the claim of Thomas, and was worth $40, and was killed about the 6th day of May, 1890.

By § 11 of the organic act, which took effect on the 2d of May, 1890, certain laws of the state of Nebraska were extended over, and put in force in the Territory of Oklahoma; and the law, as given to the jury in the

*third* instruction, places appellee's right to recover on the ground that defendants' mule was trespassing in the enclosure of appellee's husband, where her mare and colt were running, and that it was the duty of the appellants to keep their mule away from the homestead of the appellee's husband, and having failed to do so, they were liable, under the laws of Nebraska, for the injury done to the colt by defendants' mule, whether the mule was vicious or not.

The laws of Nebraska, put in force in this Territory by the organic act, and which provides for the recovery of damage done upon cultivated lands, by stock which are permitted to run at large, are as follows:

"SEC. 1. That the owners of cattle, horses, mules, swine, and sheep in this state, shall hereafter be liable for all damage done by such stock upon the cultivated lands in this state as herein provided by this act.

"SEC. 2. That all damages to property so committed by such stock running at large, shall be paid by the owners of said stock, and the person whose property is so damaged thereby, may have a lien upon such trespassing animals, for the full amount of damages and costs, and may enforce the collection of the same by the proper civil action.

"SEC. 3. That when any such stock shall be found upon the cultivated lands of another it shall be lawful for the owner or person in possession of said lands, to empound said stock, and if the owner of said stock can be found, and is known to the taker—up, it shall be the duty of said taker-up to notify said owner by leaving a written notice at his usual place of residence, with some member of his family over the age of fourteen, or in the absence of such person, by posting a copy of such notice on the door of said residence, of the taking up of said stock, describing it, and stating the amount of damages claimed; also, the name of his arbitrator, and requiring him within forty-eight hours after receiving said notice to take the said property away, after making full payment of all damages and costs to the satisfaction of said taker-up of

trespassing animals.  Said notice may be in the following form: 'Mr. ——————: You are hereby notified that on the—— day of ——————, 18—, your stock, of which I now have in my possession ———————— (here describe the animal or animals)——— did trespass upon my land, and damage the same to the amount of—————————.  You are required to pay the above charges within forty-eight hours from the delivery of this notice, or the aforesaid stock will be sold, as provided by law.  I have appointed Mr. ———————— to act as. arbitrator should you not feel satisfied with the amount· of damages claimed in the within notice.' *Provided*, That no claim for damages shall be maintained by the· taker-up without the notice contemplated in this section shall have been given when the owner is known by the taker-up of such stock."   (Comp. Stat. Neb., p. 57.)

And there is also a section which prohibits the running at large of stock in the night time, and which provides:·

"Sec. 14.  No cattle, horses, mules, swine, or sheep,. shall run at large during the night time, between sunset and sunrise, in the state of Nebraska, and the owner or owners of any such animal shall be liable in an action for damages done during such night time."· (Comp. Stat. Neb., p. 58.)

Whatever may be the proper construction and application of these statutory provisions, it is clear that they were not intended to apply to a case like this,—of injury done by one domestic animal to another,—but were intended to apply to damage done by stock on cultivated lands, and to the herbage and crops thereon; and appellants' liability, whatever it may be, must be referred to the common law and not to these statutes, and it makes. no difference whether the injury was done by the mule to the colt, before or after, the 2d day of May, 1890. And such is the theory of appellee's petition, for the· *viciousness* of the mules and the *scienter* of appellants. are distinctly averred.   It was error, therefore, for the· court to give the *third* instruction.

The law that governs a case of this character is plain and well understood. The principle is as old as the common law itself, that the owner of domestic or other animals, not naturally inclined to commit mischief, such as dogs, horses and oxen, is not liable for any injury committed by them to the person or personal property of another, unless it can be shown that he previously had notice of the mischievous propensity, or that the injury was attributable to some other neglect on his part, it being, in general, necessary, in any action for an injury committed by such animals, to allege and prove the *scienter*. (Chitty's Plead. Vol. I, p. 81; *Vroom v. Lawyer*, 13 Johns, 339; *Stumps v. Kelley* 22 Ill., 140.)

If the mule of appellants had a vicious propensity to bite, kick, and worry young colts, and they knew of such vicious propensity, it was their duty to keep their mule away from the homestead of appellee's husband, where the mare and colt were running; and, if they neglected to do so, and the colt was killed by the mule, by reason of such vicious propensity, appellants are liable for such injury, and the damages resulting therefrom.

As the court erred in giving the *third* instruction, it also erred in overruling appellants' motion for a new trial, in which the giving of the *third* instruction is stated as one ground of the motion; and the judgment of the district court must be reversed and the cause remanded with direction to award a *venire de novo*.

Reversed and remanded.

All the judges concurring.